**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| APRIL SEGOVIA, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No.  SA-18-CV-340-XR |
| | § | |
| THE PHOENIX RECOVERY GROUP, | § | |
| | § | |
| *Defendant.* | § | |

## ORDER

On this date, the Court considered the Motion for Partial Summary Judgment filed by Defendant the Phoenix Recovery Group ("PRG") (docket no. 12). PRG attempted to collect a debt owed by Plaintiff after she skipped out on her lease. Plaintiff does not dispute that she breached the lease and owes the underlying debt of approximately $5,000, which she has never paid. And she did not dispute the debt, which included a $91 charge for attorney's fees, or the $50 collection fee charged by PRG, under § 1692g of the Federal Debt Collection Practices Act ("FDCPA") when PRG first contacted her about the debt in 2012. Instead, Plaintiff waited until 2018 to file this lawsuit alleging FDCPA violations based on the $91 attorney fee charge and the $50 collection fee, because Plaintiff suspected that the fees failed to comply with the specific requirements of the Lease. Because Plaintiff fails to proffer any summary judgment evidence that the fees are unlawful or that the collection letter contained misrepresentations, summary judgment is granted in favor of Defendant.

## Procedural Background

April Segovia filed this lawsuit against Defendant PRG on April 17, 2018, alleging violations of the FDCPA insofar as Defendant PRG allegedly made false and deceptive representations to Plaintiff and attempted to collect unauthorized fees. On June 13, 2018, PRG answered, asserting the affirmative defense of limitations, and filed a counterclaim to recover its attorney's fees and costs on the ground that Plaintiff's lawsuit is frivolous and filed in bad faith. On August 11, 2018, PRG moved for summary judgment on Plaintiff's FDCPA claims on the basis that the claims are barred by limitations and that the fees were lawfully charged. Defendant's motion raises two grounds for summary judgment: (1) limitations and (2) the attorney's fee and collection fee are permitted in the lease and therefore do not violate the FDCPA. On September 23, Plaintiff objected to the motion as premature, noting that she had not had the opportunity to obtain certain discovery, including as to how and when the "Collection Fee" notation was added, by whom it was added, and by whose authority it was added. Docket no. 14 at 8. Plaintiff further argued that she needed discovery as to whether the $91 attorney's fee actually arose from "some work instituted by an attorney." *Id.* at 9.

This Court held a status conference and hearing on all pending motions on September 26. The Court noted proportionality concerns about discovery and directed the parties to confer and attempt to work out a settlement. On October 2, PRG filed its Reply, repeating its assertion of limitations and that the fees were lawful, and specifically addressing for the first time Plaintiff's claim that language concerning re-building credit was confusing in violation of the FDCPA. On October 25, Plaintiff filed a motion for leave to file a Sur-Reply, which the Court granted. On October 29, PRG filed a motion requesting a hearing on its motion for

summary judgment, which the Court granted by setting a hearing. On November 20, the Court granted Plaintiff's unopposed motion to extend the discovery deadline until March 8, 2019.

The Court held a hearing on Defendant's motion for summary judgment on December 20, 2018. At the hearing, the parties made arguments but neither side presented any evidence. The Court denied Plaintiff's request to continue consideration of the motion or deny the motion pursuant to Rule 56(d) because Plaintiff failed to comply with the rule and because any additional discovery from Sage Crossing appeared to be futile. The motion for summary judgment is thus ripe for disposition.

**Factual Background**

Plaintiff leased an apartment with Sage Crossing Apartments in San Antonio for a term from April 1, 2011 to May 31, 2012. Docket no. 12-2. Plaintiff breached the lease in December 2011 by failing to fulfill the full term of the lease, and was charged for the unpaid accelerated rent, cleaning charges, an insufficient notice penalty, attorney fees or legal charges ($91), and owed rent, totaling $5,028.15. Paragraph 32 of the Lease Agreement provides that if the tenant breaches the lease, all monthly rent for the rest of the lease contract would be accelerated and would be immediately due, and provides as "other remedies" that Sage Crossing "may recover attorney's fees in connection with enforcing our rights under this Lease Contract" and that the tenant "must pay all collection-agency fees if you fail to pay all sums due within 10 days after we mail you a letter demanding payment and stating that collection agency fees will be added if you don't pay all sums by that deadline." Docket no. 12-2.

Sage Crossing issued a final account statement on December 27, 2011. The account statement included $91 in "attorney or legal charges" and totaled $5,028.15. Docket no. 12-3.

Plaintiff did not pay, and Sage Crossing then sent the account to PRG for collection in June 2012. Docket no. 12-1, 12-5. It is undisputed that PRG is a debt collector under the FDCPA. 15 U.S.C. § 1692a(6).

PRG sent a first notice letter to Plaintiff on June 28, 2012, a second notice letter on July 24, 2012, and a third notice letter on August 30, 2012. Docket no. 12-4. These letters notified Plaintiff that she owed the account balance of $5,028.15 to Sage Crossing, and assessed an additional $50 collection fee assessed by Defendant, for a total amount due of $5,078.15. Plaintiff did not dispute the debt within thirty days of the first notice letter. *See* 15 U.S.C. § 1692g(3) (requiring the first notice of debt to inform the consumer that "unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector"). PRG continued attempts to collect the debt for the next several years. Docket no. 12-5.

Plaintiff alleges that Defendant sent a letter "on or about April 2017" and she disputed the debt. Plaintiff alleges that Defendant then "validated" the debt in a letter dated April 20, 2017. In that letter, PRG offered a "settlement off of the original balance due," showing an amount of $5,028.15 due to Creditor Sage Crossing, and a $50 collection fee, for a total due of $5,078.15. Docket no. 1-1. The $50 collection fee was handwritten onto a copy of the December 27, 2011 final account statement sent to Plaintiff by Sage Crossing Apartments (and that final account statement included a $91 charge for attorney's fees). The letter also stated, "Don't wait, call today and begin to re-establish your credit." *Id.*

Plaintiff filed this lawsuit on April 17, 2018, less than one year after the April 20, 2017 letter was mailed. She alleges that the FDCPA prohibits "seeking to collect a collection fee in

connection with the collection of a debt where underlying state law does not specifically provide for such a fee, or where the underlying contract does not permit such fees," that the underlying contract does not expressly authorize a $50 collection fee, and a $50 collection fee is exorbitant and abusive. Compl. ¶¶ 15-17. Plaintiff further alleges that "seeking to collect an attorney fee in connection with the collection of debt where underlying state law does not provide for such a fee, or where no legal proceedings occurred and as such the underlying contract does not permit such fees, is a violation of the FDCPA," and that no legal proceedings occurred warranting a $91 attorney fee. *Id.* ¶¶ 19-20. Last, Plaintiff alleges that the statement "Don't wait, call today and begin to re-establish your credit" is "false, deceptive and misleading in violation of the FDCPA as the least sophisticated consumer would be confused as to whether the payment of this debt alone would 're-establish' his or her credit." *Id.* ¶ 21. Plaintiff thus asserts violations of § 1692e, prohibiting certain false or misleading representations, and § 1692f, prohibiting certain unfair practices, including the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

## Analysis

### A. Limitations

Section 1692k of the FDCPA authorizes civil actions to enforce the FDCPA, and provides that such an action may be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). The alleged violations in this case are "the collection of any amount (including any interest, fee, charge, or expense)" not permitted by law under §

1692f(1) and false or misleading representations under § 1692e. Defendant asserts that "Plaintiff's lawsuit is barred by the one year FDCPA Statute of Limitations" because its first notice letter dated June 18, 2012 started the limitations clock of one year. Docket no. 12 at 2-3.

Defendant relies primarily on a factually similar case, *Roe v. Tolteca Enterprises, Inc. d/b/a The Phoenix Recovery Group*, No. 6:17cv242, 2018 WL 1900532 (E.D. Tex. Apr. 20, 2018), in which it argued that the plaintiff was placed on notice that she was being charged a $50 collection fee in the move-out reconciliation from the lessor in 2010 and from the first collection letter that it mailed to her, and thus her claim filed in 2017 was time-barred. The plaintiff argued that each attempt to collect the $50 fee was a discrete violation, such that she would have a new claim each time a letter was sent including the fee, regardless of when it was initially assessed, and thus her claim (which was based on a 2016 letter including the fee) was timely.

The *Roe* court did not locate any Fifth Circuit cases that asserted a violation of § 1692f(1) on the same facts, and thus discussed a Fifth Circuit case involving § 1692i(a)(2) ("legal actions by debt collectors"), finding that a debtor's injury occurs when he learns that he has been sued and that is when a violation of "bringing suit" occurs for limitations purposes. Of course, a holding as to when a cause of action accrues based on "bringing suit" does not determine when a cause of action accrues for "collecting a fee" or making false representations under other FDCPA provisions. Recognizing this, the *Roe* court further discussed different court cases finding either that each communication from a debt collector may create a new, actionable violation or that limitations begins running from the first letter when multiple letters are sent for the same debt. The court concluded that it would be

inappropriate to "keep the claim alive indefinitely" by finding that each new communication could start a fresh statute of limitations, and thus found that the alleged violation of the FDCPA for seeking to collect a $50 collection fee occurred in December 2010, when the defendant first assessed and sought to collect the fee, and that the plaintiff's claim was barred by limitations.

Some courts, like *Roe*, hold that the first alleged FDCPA violation puts the plaintiff on notice and starts the limitations period, and that "new communications . . . concerning an older claim . . . [do] not start a new period of limitations." *E.g.*, *Nutter v. Messerli & Kramer, P.S.*, 500 F. Supp. 2d 1219, 1223 (D. Minn. 2007); *Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291, 1307 (S.D. Fla. 2009). However, more courts have concluded that when a series of violations is alleged, even if they relate to the same debt, each discrete violation should be analyzed on an individual basis. *Solomon v. HSBC Mortgage Corp.*, 395 F. App'x 494, 497 (10th Cir. 2010). This is because "[a]ny other rule would immunize debt collectors for later wrongdoing." *Id.* "It does not matter that the debt collector's violation restates earlier assertions – if the plaintiff sues within one year of the violation, it is not barred by § 1692k(d)" and "[e]ach alleged violation of the FDCPA is 'evaluate[d] . . . individually to determine whether any portion of' the 'claim is not barred by the state of limitations.'" *Demarais v. Gurstel Chargo P.A.*, 869 F.3d 685, 694 (8th Cir. 2017). Along those lines, courts have held that when numerous letters are sent, each letter may constitute a separate violation of the FDCPA. *See, e.g.*, *Michalak v. LVNV Funding, LLC*, 604 F. App'x 492 (6th Cir. 2015); *Kaplan v. Asssetcare, Inc.*, 88 F. Supp. 2d 1355, 1360 (S.D. Fla. 2000) (plaintiff sued on dunning letters sent January 1998 to June 1998 as violations of §§ 1692e and § 1692f(1) and

court found only those sent more than one year before suit was filed were time barred); *Murphy v. MRC Receivables Corp.*, No. 06-0299-CV-W-NKL, 2007 WL 148823 (W.D. Mo. Jan. 12, 2007).

Courts recognizing this rule, however, generally reject any "continuing violation" theory, where parties argue that later acts (within the limitations period) revive the limitations period for older acts outside the limitations period. *See Gajewski v. Ocwen Loan Serv.*, 650 F. App'x 283, 286 (7th Cir. 2016) ("The 'continuing violation' doctrine, which actually concerns 'cumulative' violations, 'does not apply to 'a series of discrete acts, each of which is independently actionable, even if those acts form an overall pattern of wrongdoing.'"); *Solomon v. HSBC Mortgage Corp.*, 395 F. App'x 494, 487 n.3 (10th Cir. 2010); *Schaffhauser v. Citibank (S.D.), N.A.*, 340 F. App'x 128, 131 (3d Cir. 2009) (declining to extend the continuous violation doctrine to an FDCPA claim); *Boles v. Moss Codilis, LLP*, No. SA-10-CV-1003-XR, 2012 WL 12861080, at *4 n.10 (W.D. Tex. Jan. 17, 2012) ("Another argument that is commonly proffered in FDCPA cases, albeit unsuccessfully, is the continuous violation doctrine, which would bring otherwise time-barred claims within the statute of limitations.").

Plaintiff relies on the line of cases holding that when a plaintiff alleges a series of violations, activity outside the one-year period is barred by limitations, while activity within the one-year period is not. Although Defendant asserts that Plaintiff is pursuing a continuing violation theory, a careful analysis of the briefing shows that Plaintiff is at most arguing that acts outside the one-year limitations period are relevant, not that they are actionable. Plaintiff does not espouse, and the Court does not adopt, any continuing violation theory.

Plaintiff contends that *Roe* represents the minority view, and that in fact this Court has already recognized and applied the majority view in *Boles v. Moss Codilis, LLP,* No. SA-10-CV-1003-XR, 2012 U.S. Dist. LEXIS 196826, 2012 WL 12861080 (W.D. Tex. Jan. 17, 2012). In *Boles*, the debt collector sent the plaintiff a series of letters attempting to collect on the same alleged debt, and all of which contained the same allegedly misleading statement. The defendant argued that limitations began when the first letter was sent, because otherwise a cause of action could be "kept alive indefinitely." Although this Court did not adopt a "continuing violation" theory, the Court agreed with what it found to be the majority view that discrete violations should be analyzed on an individual basis and that the letter sent within the limitations period was actionable.

The Court follows its prior opinion in *Boles* and the majority view of cases treating each alleged violation as a discrete violation for purposes of limitations. The FDCPA's limitations period runs "from the date on which the violation occurs" and thus its applicability "turns on when the alleged 'violation' occurred." *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 691 (8th Cir. 2017). The language of § 1692f(1) is: "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: (1) The collection of any amount (including any interest fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Thus, limitations turns on when Defendant "collected" the fee within the meaning of the FDCPA – when it sent the first letter including the Sage Crossing bill assessing the fee, when it sent each letter attempting to collect on the debt that included

the fee, not until it actually collects the fee,[1] when it sues to collect such a fee, all of the above?

Without expressly addressing this issue, Defendant's motion presumes that "collection" occurred in the first letter that included the fee in 2012, and no other time. However, courts have construed § 1692f(1) as including attempts to collect. As discussed in *McLain v. Head Mercantile Co., Inc.*, No. 16-780-JWD-RLB, 2017 WL 3710073, at *21 (M.D. La. Aug. 28, 2017):

> Although the catchall provision of 1692f specifically notes that both actual collection and collection attempts are proscribed by statute, subsection 1692f(1) refers only to the collection of any amounts not authorized by contract or by law. See 15 U.S.C. §§ 1692f and f(1). However, the Court finds that the catchall provision is intended to encompass the nonexclusive list of enumerated offenses in its subsections, and that the "attempt" language of 1692f also applies to 1692f(1). . . . . This conclusion is consistent with jurisprudence addressing this exact issue. *See, e.g., Diaz v. Kubler Corp.*, 785 F.3d 1326, 1328 (9th Cir. 2015) ("[T]he [FDCPA] prohibits debt collectors from trying to collect any amount that is not 'expressly authorized by the agreement creating the debt or permitted by law.' 15 U.S.C. § 1692f(1)."); *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 949 (9th Cir. 2011) ("Section 1692f(1) prohibits the use of 'unfair or unconscionable means to collect or attempt to collect any debt[.]'"); *Miller v. Wilpoff & Abramson, L.L.P.*, 321 F.3d 292, 308 (2d Cir. 2003) ("plaintiff's cause of action under § 1692f(1) requires a showing that defendants attempted to collect an amount not expressly permitted either by the agreement creating the debt or by law."); *Thomas*, 232 F.Supp.3d at 676–77 ("Section 1692f(1) is one of a number of nonexclusive examples of conduct that violates the more general proscription of 1692f, which outlaws attempts."); *Shami*, 914 F.Supp.2d at 357 ("The fact that subsection (1) of § 1692f does not specify that it includes both collections of and attempts to collect unauthorized incidental fees does not limit the general provision of the statute that includes attempts to collect. Courts in this circuit and others have continued to resolve cases involving § 1692f(1) where no actual collection appears to have taken place, instead focusing on the communication seeking payment itself."); *B-Real, LLC v. Rogers*, 405 B.R.

---

[1] Along this vein, one court has held that § 1692f(1) is premised on "actual collection" such that the defendant had to prove that the actual collection or the payoff amount was outside the statute of limitations. *Kline v. MERS*, 154 F. Supp. 3d 567 (S.D. Ohio 2015). Under this view, the statute of limitations has not yet begun to run in this case. The Court does not adopt this view.

428, 433 (M.D. La. 2009) ("Section 1692f(1) prohibits a debt collector from seeking to collect on any amount 'unless ... permitted by law.'"); *McAdams v. Citifinancial Mortg. Co., Inc. of New York*, 06-27 and 06-636, 2008 WL 577559, at *2 n.6 (M.D. La. Mar. 3, 2008) (reading Section 1692f and 1692f(1) in tandem to apply the "attempt" language of 1692f to 1692f(1)); *Jackson v. Adcock*, 03-3369, 2004 WL 1900484, at *5 n.27 (E.D. La. Aug. 23 2004) (same).

Thus, "[a] debt collector violates § 1692f(1) when it sends a letter attempting to collect money not permitted by law." *Demarais*, 869 F.3d at 691 (citing *Duffy v. Landberg*, 215 F.3d 871, 875 (8th Cir. 2000)). In addition, a debt collector violates § 1692e when it makes a false representation or uses false representations as proscribed in that section. The Eighth Circuit has held that each alleged violation of the FDCPA is evaluated individually to determine whether any portion of the claim is barred by limitations, and it does not matter that the debt collector's violation restates earlier assertions. *Demarais*, 869 F.3d at 694. Thus, if the plaintiff plausibly alleges that the debt collector defendant violated the FDCPA on a certain date within the one-year limitations period, the plaintiff's claim is not barred by limitations. *Id.* Accordingly, summary judgment on limitations is denied as to Plaintiff's claims that the April 20, 2017 letter violated §§ 1692e and 1692f(1).

**B. Whether the fees are authorized?**

The lawfulness of the $91 attorney's fee charge and the $50 collection fee turns on whether the charges are "expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. §1692f(1). Defendant argues that, even if Plaintiff's claims are not barred by limitations, the fees charged do not violate the FDCPA because they are authorized by Plaintiff's lease agreement, which is the agreement creating the debt. Paragraph 32 of the Lease provides that if the tenant breaches the lease, all monthly rent for the rest of the lease

contract would be accelerated and would be immediately due, and provides as "other remedies" that Sage Crossing "may recover attorney's fees in connection with enforcing our rights under this Lease Contract" and that the tenant "must pay all collection-agency fees if you fail to pay all sums due within 10 days after we mail you a letter demanding payment and stating that collection agency fees will be added if you don't pay all sums by that deadline."

Plaintiff argues that Defendant has not shown that any attorney work was done to authorize the $91 attorney fee under the lease and that, "[g]iven that the contract between Plaintiff and the original creditor does not expressly authorize the amount of the collection fee, nor has Defendant fulfilled the express requirements under the contract in order to collect the collection fee, it is not beyond dispute that such fees are not authorized by the lease document signed by Plaintiff."

1. $50 collection fee charged by Defendant

Defendant asserts that the $50 collection fee is lawful because it was authorized in ¶ 32 of the lease. It would be Plaintiff's burden at trial to establish that the collection fee was not authorized by the Lease agreement. Plaintiff argues that Defendant has not shown that the collection-agency fee is specifically authorized on these facts because the lease states, "You must pay all collection-agency fees if you fail to pay all sums due within 10 days after we mail you a letter demanding payment and stating that collection agency fees will be added if you don't pay all sums by that deadline." Plaintiff argues that "the creditor is required to send a letter to Plaintiff" and "Defendant does not attach the letter to its motion, nor has it provided this letter in discovery" such that fact issues remain about whether the demand letter was sent and thus whether the fee is permissible.

However, even though Defendant is the summary judgment movant, it is not required to negate an element of Plaintiff's case. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017) ("[I]t has long been the rule that when the nonmovant has the burden of proof at trial, the moving party may make a proper summary judgment motion, thereby shifting the summary judgment burden to the nonmovant, with an allegation that the nonmovant has failed to establish an element essential to that party's case."); *In re Louisiana Crawfish Producers*, 852 F.3d 456, 463 (5th Cir. 2017) (rejecting plaintiffs' argument that the district court erred by shifting the summary judgment burden to them because the defendant did not submit any evidence in support of its motion for summary judgment because plaintiffs bore the burden of proof at trial and therefore the burden of demonstrating facts necessary to their claim).

Defendant's assertion that the fee is lawful is a direct challenge to Plaintiff's assertion that it is not lawful. Defendant argued that the fee is permitted by the lease, and asserted that there was likely no direct evidence concerning whether Sage Crossing sent the letter, given the passage of time. Docket no. 16 at 5. Defendant's motion notes that it need not negate the elements of Plaintiff's claim but can "point out the absence of evidence supporting the non-movant's case." Docket no. 12 at 4.

Defendant's motion sufficiently shifted the burden to Plaintiff to show why the fee was not lawful by coming forward with summary-judgment evidence that the letter was not sent and that the fee is thus not authorized by the Lease or that the fee was otherwise exorbitant or unlawful. Defendant need not use the magic words "no evidence" to successfully assert the absence of facts supporting an element of the plaintiff's claim. Plaintiff has provided no evidence to support her assertion that the letter was never sent and thus the collection fee is

unauthorized. She could have provided an affidavit stating that she never received such a letter, which would have been some circumstantial evidence that the letter was never sent and would have required no discovery. But she did not do so, despite this motion being on file for over four months. She could also have appeared and testified at the summary-judgment hearing, but she did not.

Because Defendant's motion put this fact in issue, Plaintiff cannot point to the existence of "no evidence" to establish a fact issue. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) ("We do not, . . ., in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."). Rather, Plaintiff had the burden to produce summary-judgment evidence upon which a jury could reasonably find that the letter was not in fact sent. *Id.* (where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, summary judgment is appropriate). On this summary judgment record, there is no evidence from which a jury could reasonably find either that the letter was or was not sent. That is not a fact question, but an absence of evidence, which is an appropriate basis for summary judgment.

Defendant further provided some evidence to justify the amount of the fee, and Plaintiff provided no evidence to raise a fact issue on whether the fee is exorbitant. The lease permits assessment of all collection fees, without limitation. The Court finds as a matter of law that the $50 fee is not exorbitant and is lawful, as it is 1% of the debt and is reasonably related to collection costs.[2]

---

[2] One court has held that an 18% collection fee was not usurious and thus not violative of the FDCPA. *Bibbins v. McCarthy, Burgess & Wolff, Inc.*, No. 16-cv-02829, 2018 WL 1534969, at *3 (N.D. Ill. Marc. 29, 2018).

Defendant's motion for summary judgment is granted as to Plaintiff's claims related to the $50 collection fee.

### 2. $91 attorney fee charged by Sage Crossing

With regard to the attorney's fee charge, Defendant asserts that the $91 attorney's fee was assessed by Sage Crossing and included in Plaintiff's debt account balance under the lease, and the fee did not originate with Defendant. Defendant argues that it was not the producing cause of Plaintiff's complaint about the $91 attorney's fee and her claim should be directed at Sage Crossing, not Defendant, who was entitled to rely on the account as stated by the creditor when the debtor does not dispute the debt within thirty days of receiving the letter. Plaintiff contends that the fact that Sage Crossing may have imposed the $91 attorney fee is irrelevant because the FDCPA is a strict liability statute, and Defendant has not established a bone fide error defense.[3]

Paragraph 32 of the lease states that "[Sage Crossing] may recover attorney's fees in connection with enforcing our rights under this Lease Contract." Plaintiff argues that attorney's fees are allowable only if actual attorney work was done to enforce the lease, and that Defendant has not shown as a matter of law that the $91 fee was allowable on the facts even though the lease generally permits recovery of attorneys' fees. Again, it is Plaintiff's burden to prove that PRG is attempting to collect an amount that is not expressly authorized by the agreement creating the debt. PRG asserts in its motion that it is not violating the FDCPA because the fee is part of the debt assessed by the creditor, Sage Crossing, pursuant to

---

[3] Debt collectors are entitled to a defense for conduct that otherwise violates the FDCPA "if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c).

¶ 32 of the Lease and is lawful. Docket no. 12 at 2 ("It was lawful for Defendant to seek the collection of the $91.00."); *id.* at 5 ("The $50 and $91 fees were lawful.").

For Plaintiff to succeed on her claim, and before Defendant would be required to prove a bona fide error defense, Plaintiff must prove that PRG was attempting to collect an unauthorized fee. Plaintiff asserts that the fee must be considered unlawful because there is no evidence that Sage Crossing utilized attorney services that would warrant imposition of attorney's fees. But again, Plaintiff cannot rely on an assertion of "no evidence" to create a fact issue on an element on which she bears the ultimate burden of proof. Plaintiff provides no evidence to raise a material issue of fact as to whether attorney's services were utilized,[4] and this lack of evidence from which a jury could find for Plaintiff requires summary judgment.

Defendant's motion for summary judgment is granted as to the $91 attorneys' fee charge.

## C. Whether the statement "Don't wait, call today and begin to re-establish your credit" is misleading in violation of the FDCPA?

PRG asserts that it is entitled to summary judgment on this claim because the language is not deceptive or misleading. We must evaluate any potential deception in the letter under an unsophisticated or least sophisticated consumer standard. That is, in determining whether the defendant's actions are deceptive, we must assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors. At the same time, we do not consider the debtor as

---

[4] To the extent Plaintiff sought a continuance to obtain discovery from Sage Crossing, she failed to comply with Rule 56(d) or explain why she had not yet obtained this discovery during the past four months. In addition, as noted at the hearing, it appears that discovery from Sage Crossing on this issue would be futile as Defendant has submitted evidence that Sage Crossing has changed management and no longer has the relevant records concerning Segovia's debt. This problem is largely a result of the fact that Plaintiff, rather than disputing the charge after the initial dunning letter in 2012, waited until 2018 to challenge the fee.

tied to the "very last rung on the [intelligence or] sophistication ladder." *Goswami v. Am.*
*Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir. 2004). In the Fifth Circuit, whether an
unsophisticated consumer would perceive a letter as misleading, deceptive, or unfair is usually
a question of fact, though the decision may be made as a matter of law when reasonable minds
cannot differ. *Gomez v. Niemann & Heyer, LLP*, No. 1:16-CV-119-RP, 2016 WL 3562148
(W.D. Tex. June 24, 4016).

Although PRG did not initially move for summary judgment on this claim, in its Reply
it asserts that it is entitled to summary judgment on this claim because "[n]o least sophisticated
customer could possibly believe that a debt payment will cure the debtor's negative credit
bureau report" but would know that paying debts helps their credit, such that nobody could
really be confused or misled. Docket no. 16 at 6. Plaintiff notes that this issue was raised
initially in the reply and asserts that the Court should thus not grant summary judgment on it.
However, Plaintiff does respond to the motion on the merits, arguing that the letter is clearly
false and misleading to the least sophisticated consumer, and Plaintiff filed a Sur-Reply. Thus,
the Court finds that Plaintiff had notice and an opportunity to respond to Defendant's motion
on this claim, and that the issue is ripe for disposition.

Defendant asserts that the statement is not misleading because it does not promise to
fix Plaintiff's credit; it states only that payment would "begin" to re-establish Plaintiff's credit.
Plaintiff argues that a consumer would believe that by making payment on the debt, she would
re-establish her credit. Plaintiff argues this is false because in many instances paying off a debt
actually hurts a consumer's credit score because it make the payment of the debt appear as a
recent negative, negatively affecting the FICO score. Second, she argues that the item was set

to remain on Plaintiff's credit report for a short period of time, and so might not have reflected on her credit at all, let alone re-establish her credit. Plaintiff says there is no dispute this statement was made to incentivize the consumer to make payment, with the belief it would help her credit, and therefore it is a false representation.

Plaintiff relies on *Knight v. Midland Credit Management, Inc.*, No. 17-3786, __ F. App'x __, 2018 WL 5876985 (3d Cir. Nov. 8, 2018), in which the court of appeals reversed a 12(b)(6) dismissal. Plaintiff argued that the statement, "We can't change the past, but we can help with your future," was misleading because it creates a false interpretation that paying off the debt will improve the debtor's credit score or credit worthiness, when paying off a delinquent debt would actually harm the debtor's credit score. *Id.* at *3.

In this case, PRG's statement does not promise to improve a consumer's credit or credit score. Even if it could be considered false or misleading because it would in fact have a short-term effect of negatively affecting a consumer's credit score, Plaintiff has provided no evidence to that effect. *Knight* was decided on a motion to dismiss for failure to state a claim. This case is at summary judgment. Plaintiff has presented no evidence from which a jury could conclude that the statement is false and therefore misleading or deceptive. Counsel's arguments are not evidence. Thus, the Court grants summary judgment on this claim.

**D. Defendant's counterclaims for attorney's fees and costs**

The Court *sua sponte* considers summary judgment on Defendant's counterclaim under 15 USC § 1692k(a)(3), which states, "On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." While

ordinarily notice and an opportunity to be heard would be needed before granting summary judgment, the statute makes this an issue for the Court rather than a jury, and it can be decided at this point as a matter of law such that Defendant would not be harmed by the lack of opportunity to present evidence. The Court finds that the action was not brought in bad faith or for the purpose of harassment, and grants summary judgment in favor of Plaintiff on Defendant's counterclaim.

## Conclusion

Although the Court disagrees with Defendant that Plaintiff's claims are barred by the statute of limitations, the Court finds that summary judgment is warranted on the merits of Plaintiff's claims. Thus, the Motion for Summary Judgment (docket no. 12) is GRANTED. The Clerk shall enter Judgment that Plaintiff's claims are dismissed on the merits with prejudice and that Plaintiff shall take nothing by her claims. After *sua sponte* consideration of Defendant's counterclaim for fees and costs, Plaintiff is awarded summary judgment on Defendant's counterclaim, and Defendant shall take nothing by its counterclaim.

This case is now CLOSED.

It is so ORDERED.

SIGNED this 26th day of December, 2018.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE